UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
STACY ANN WILLIAMS-MOORE,

                Plaintiff,                **MEMORANDUM & ORDER**

       v.                                             No. 22-CV-3592 (RPK) (RML)

QUICK INTERNATIONAL COURIER, LLC,

                Defendant.
------------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      *Pro se* plaintiff Stacy Ann Williams-Moore brought this action against her employer, Quick International Courier, LLC, alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Quick moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition and also sought leave to file an amended complaint. For the reasons set forth below, I exercise my discretion to construe Quick's motion as directed against the amended complaint. So construed, Quick's motion is granted as to plaintiff's claims of discrimination and retaliation in violation of the ADA and denied as to plaintiff's claim that Quick's COVID testing policy violates the ADA's limitations on employer medical examinations.

## BACKGROUND

      The following facts are drawn from plaintiff's proposed amended complaint, *see* Pl.'s Proposed Am. Compl. (Dkt. #26) ("Am. Compl.") and are assumed to be true for purposes of this order.

      In September 2018, plaintiff began working for Quick as an import agent. Am. Compl. ¶ 86; *see* Pl.'s Aff. in Supp. of Am. Compl. ("Pl.'s Aff.") ¶ 13 (Dkt. #26-1). At Quick's direction,

1

she worked from home during the COVID-19 pandemic from June 2020 until July 2021 and then returned to in-person work. Am. Compl. ¶¶ 88–89.

In 2021, New York City adopted a COVID-19 vaccine mandate, which took effect on December 27, 2021. Jan. 20, 2022 Letter from Kevin Nunes to Plaintiff, Ex. A-1 ("Jan. 20, 2022 Nunes Letter"), at 12 (ECF Pagination) (Dkt. #26-1). The mandate compelled certain private employers, including Quick, to require employees to submit proof of vaccination or request a medical or religious exemption. *Ibid.*; Am. Compl. ¶ 91; Pl.'s Aff. ¶ 18.

In December 2021, to bring Quick into compliance with that policy, Quick "adopted a new 'vaccine policy'" under which in-person employees—though not those who worked from home—were required to become vaccinated against COVID-19. Am. Compl. ¶ 91; *see* Jan. 20, 2022 Nunes Letter 12.

On December 27, 2021, the day the vaccine mandate took effect, plaintiff reported to work but was sent home after she failed to produce proof of vaccination. Am. Compl. ¶ 93; Jan. 20, 2022 Nunes Letter 12. On January 13, 2022, plaintiff asked if she could continue working remotely instead of being vaccinated, but that request was denied the next day. *See* Am. Compl. ¶ 95. Plaintiff was subsequently informed that "the only way to opt-out of this [vaccine] requirement was to request a medical or religious exemption." *Id.* ¶ 94; *see* Jan. 20, 2022 Nunes Letter 12. Plaintiff was further advised that if she did not comply with the policy by January 28, 2022—either by receiving the vaccine or claiming an exemption—she would be fired. Am. Compl. ¶ 94; Jan. 20, 2022 Nunes Letter 12.

Plaintiff did not receive the COVID-19 vaccine or claim a medical or religious exemption. Instead, beginning on January 27, 2022, plaintiff sent Quick letters objecting to the company's policy and citing the ADA. Am. Compl. ¶ 98. Plaintiff told Kevin Nunes, Quick's Vice President of Human Resources, that "she qualified for protection under the ADA" because "she was being

2

regarded as disabled by her employer because its policy treated her as if she was contagious and needed 'vaccines', masks, health tests [and] all these mitigation measures." *Id.* ¶ 100. Plaintiff also again asked "to continue working from home." *Id.* ¶ 98.

Through Mr. Nunes, Quick advised plaintiff that it "would only allow her to refuse the 'vaccine' if she obtained a doctor's note or claimed a religious exemption." *Id.* ¶ 101. Quick "also refused to allow plaintiff to continue working from home," *id.* ¶ 107, because it "decided that her department needed to work at the office," *id.* ¶ 109, and that "it was good for training purposes to have people in the office," *id.* ¶ 110.

Plaintiff told Mr. Nunes that "she assumed she was fired because she was neither allowed to work from home nor [from] the office without waiving her rights and she was not getting paid," but Nunes denied that plaintiff had been fired. *Id.* ¶ 111. Plaintiff alleges that "January 31, 2022 was the last day [she] was allowed to work and the last day she was paid for," *id.* ¶ 117, and that she was subsequently barred from clocking in at work or logging into her workstation, *id.* ¶ 118, 122.

In February 2022, plaintiff filed a complaint with the Equal Opportunity Employment Commission ("EEOC") alleging that Quick had discriminated against her on the basis of disability. *Id.* ¶ 124. After receiving a right-to-sue letter from the EEOC, *id.* ¶ 126, plaintiff filed her initial complaint in this lawsuit in June 2022, alleging that Quick discriminated and retaliated against her in violation of the ADA. *See generally* Compl. (Dkt. #1). The original complaint included allegations that Quick improperly "required non-job-related medical examinations or made disability-related inquiries of plaintiff that were not consistent with business necessity," Compl. ¶ 59 & n.3, but did not expressly state a cause of action under the portion of the ADA that limits employers' disability inquiries and their use of medical examinations, *see generally id.*

3

Quick moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Not. of Mot. to Dismiss (Dkt. #12); Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mot.") (Dkt. #14). Plaintiff filed an initial opposition brief, *see* Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") (Dkt. #18), and a supplement, *see* Pl.'s Supp. Opp'n to Mot. to Dismiss ("Pl.'s Supp. Opp'n") (Dkt. #20).

After the motion to dismiss was fully briefed, plaintiff sought leave to file an amended complaint. *See generally* Mot. to Amend (Dkt. #26). Plaintiff's proposed amended complaint again includes claims under the ADA for disability discrimination, *see* Am. Compl. ¶¶ 134–88, and retaliation, *see id.* ¶¶ 189–238. It also adds a claim alleging a violation of the ADA provision limiting employers' disability inquiries and medical examinations, *see id.* ¶¶ 239–80.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)) (quotation marks omitted). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks omitted).

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). When reviewing the complaint on a motion to dismiss, the court must accept all facts alleged in a complaint as true. *Iqbal*, 556 U.S. at 678. The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id.* at 678–79.

The complaint of a *pro se* plaintiff must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

Plaintiff's motion for leave to file an amended complaint is granted, but the amended complaint is dismissed in part. When a plaintiff seeks to amend her "complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting *Roller Bearing Co. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)). In this case, "[d]efendant has had a full opportunity to respond to the proposed amendments, [p]laintiff does not seek to add new defendants, and the claims remain [essentially] the same"

between the two complaints, so "the Court will consider the merits of the motion to dismiss based on the proposed amended complaint." *Covic v. Allstate Indem. Co.*, No. 16-CV-0050 (BKS) (TWD), 2016 WL 10489841, at *1 (N.D.N.Y. Sept. 7, 2016). Measured against the amended complaint, Quick's motion to dismiss is granted as to plaintiff's claims of discrimination and retaliation under the ADA, because plaintiff fails to plausibly allege those violations. But Quick's motion to dismiss is denied as to plaintiff's claim that Quick's COVID testing policy constituted an improper medical examination under the ADA, because plaintiff has adequately pleaded that claim.

## I. ADA Discrimination

The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees" or "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). With respect to an individual, the term "disability" means not only "a physical or mental impairment that substantially limits one or more major life activities of such individual," *id.* § 12102(1)(A), but also "a record of such an impairment," *id.* § 12102(1)(B), or "being regarded as having such an impairment," *id.* § 12102(1)(C). Here, plaintiff does not claim that she has a physical or mental impairment that substantially limits one or more of her major life activities. But she alleges that, by imposing its COVID-19 vaccination policy, Quick both regarded her as having a disability and made a record of her disability, and discriminated against her on that basis. *See* Am. Compl. ¶¶ 144–46, 154–55. These arguments are unpersuasive, and plaintiff's ADA discrimination claim is therefore dismissed for failure to plausibly allege that plaintiff is disabled within the meaning of the ADA.

### A. Plaintiff Has Failed to Plausibly Allege that She Was "Regarded as" Disabled by Quick

Plaintiff has failed to plausibly allege that Quick regarded her as disabled. "[A] plaintiff 'is regarded as disabled within the meaning of the ADA if [her employer] mistakenly believes that [her] actual, nonlimiting impairment substantially limits one or more major life activities.'" *Whitehead v. United Parcel Serv., Inc.*, 387 F. App'x 16, 18 (2d Cir. 2010) (quotation marks omitted) (quoting *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521–22 (1999)). Plaintiff has not plausibly alleged that Quick regarded her as disabled in that way. Plaintiff nowhere alleges that Quick believed plaintiff was unable to perform any major life activities. Instead, plaintiff alleges that Quick's COVID-19 vaccine requirement evidences that the company regarded *all* its employees as "as impaired and in need of treatment." Am. Compl. ¶ 32. But because vaccines are designed to prevent illness, rather than to treat it, the fact that a company required employees to obtain the COVID-19 vaccine does not plausibly suggest that the company believed all its employees had impairments that substantially limited their ability to perform major life activities.

Plaintiff alternatively suggests that Quick's vaccination policy indicates that Quick regarded those who declined to be vaccinated "as disabled with a deadly, contagious disease." Am. Compl. ¶ 33. But at most, the company's policy raises an inference that Quick regarded unvaccinated employees as susceptible to COVID-19—that is, "at risk of developing COVID-19 *in the future*." *D'Cunha v. Northwell Health Sys.*, No. 22-CV-0988 (MKV), 2023 WL 2266520, at *5 (S.D.N.Y. Feb. 28, 2023). And the ADA's prohibition on discrimination based on perceived disability applies only when the employer regards the employee as "*having . . . an impairment.*" 42 U.S.C. § 12102(1)(C) (emphasis added). Consistent with that language, "every circuit court that has addressed the issue has concluded that the ADA does not prohibit discrimination based on *future* impairments." *D'Cunha*, 2023 WL 2266520, at *5 n.5 (collecting cases). Since Quick's

7

vaccination requirement suggests at most that the company regarded unvaccinated employees as susceptible to COVID-19, that vaccination requirement does not raise a plausible inference that Quick regarded unvaccinated employees as disabled. *See Newell v. State Univ. of N.Y. Westchester Cmty. Coll.*, No. 22-CV-8524 (PMH), 2023 WL 4082030, at *3 (S.D.N.Y. June 20, 2023) (collecting cases rejecting claims that employers with COVID-19 vaccination requirements regarded their employees as disabled under the ADA).

For these reasons, like a chorus of courts in this Circuit, I conclude that an employer's imposition of a COVID-19 vaccination requirement does not raise a plausible inference that the employer regarded all its employees (or its unvaccinated employees) as disabled within the meaning of the ADA. *See, e.g.*, *id.* at *4; *Apuzza v. NYU Langone Long Island*, No. 22-CV-7519 (JMA) (JMW), 2023 WL 4471956, at *4 (E.D.N.Y. July 11, 2023); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936 (AMD) (JRC) 2023 WL 2163774, at *5–6 (E.D.N.Y. Feb. 22, 2023); *D'Cunha*, 2023 WL 2266520, at *5; *Sharikov v. Philips Med. Sys. MR, Inc.,* No. 22-CV-0326 (BKS) (DJS), 2023 WL 2390360, at *7 (N.D.N.Y. Mar. 7, 2023); *Earl v. Good Samaritan Hops.*, No. 20-CV-3119 (NSR), 2021 WL 4462413, at *6 (S.D.N.Y. Sept. 28, 2021). Plaintiff has therefore failed to plausibly allege disability discrimination on that theory.

### B. Plaintiff Has Also Failed to Plausibly Allege that She Suffered Discrimination Based on a "Record of" Her Disability

For similar reasons, plaintiff has failed to plausibly allege that Quick discriminated against her based on a "record of" her disability within the meaning of the ADA. EEOC regulations provide that a plaintiff has a record of disability if the plaintiff has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). Consistent with those regulations, the Second Circuit has held that to form the basis for an ADA claim, the "record of" disability "must be one

that shows an impairment that satisfies the ADA." *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 645 (2d Cir. 1998).

Plaintiff has not plausibly alleged that Quick discriminated against her based on such a record for essentially the same reasons that plaintiff has not plausibly alleged discrimination based on perceived disability. As discussed above, Quick's vaccine policy does not suggest that Quick ever saw plaintiff as unable to perform any major life activities, and plaintiff has not pointed to any other evidence plausibly suggesting that Quick saw plaintiff as having a disability. Accordingly, like other courts in this circuit confronted with claims based on company COVID policies, I find that the record-of-disability theory fares no better than its regarded-as counterpart. *See, e.g.*, *Sharikov,* 2023 WL 2390360, at *9 (dismissing "record of" ADA claim when "[t]here are no facts alleged indicating that being unvaccinated is a disability" nor that a "weakened immune or respiratory system that makes an individual vulnerable to COVID-19 is a physical impairment that substantially limited a major life activity"); *Apuzza*, 2023 WL 4471956, at *4 (collecting similar cases).

Accordingly, plaintiff's amended complaint fails to state a claim for discrimination in violation of the ADA.

## II. ADA Retaliation

Plaintiff has also failed to state a claim for retaliation in violation of the ADA.

Under the ADA, an employer cannot "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b). To state a claim under this provision, a plaintiff must plausibly allege that (1) she engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Weixel v. Bd. of Educ. of City of*

9

*N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002). I assume that plaintiff engaged in protected activity both by filing an EEOC charge in February 2022 and by advising Quick, beginning on January 27, 2022, that she believed its vaccination policy violated her rights under the ADA. *See* Am. Compl. ¶¶ 98–114, 116, 120, 124. There is also no doubt that Quick was aware of plaintiff's opposition to its COVID-19 policies. *See* Am. Compl. ¶ 222. And plaintiff's allegations that Quick stopped paying her, refused to permit her to return work, and ultimately fired her qualify as adverse employment actions. *See Lovejoy-Wilson v. NOCO Motor Fuel,* 263 F.3d 208, 223 (2d Cir. 2001).

But plaintiff has failed to plausibly allege facts supporting a causal connection between the adverse employment actions and her protected activity sufficient to create an inference of retaliatory intent. As the complaint sets out, Quick implemented a policy requiring vaccination "as [a] new condition[] of employment," on December 21, 2021, Am. Compl. ¶ 10; *see id.* ¶ 91—before plaintiff had engaged in any protected activity. Quick then directed plaintiff on December 27, 2021, to leave work because she had not provided proof of vaccination—again, before the protected activity had occurred. *See id.* ¶ 93. Finally, Quick advised plaintiff on January 20, 2022, that, "[i]n order to maintain [her] position with Quick," she needed to provide proof of vaccination or request a medical or religious exemption—once again, before the protected activity. Jan. 20, 2022 Nunes Letter 12.

Under these circumstances, plaintiff has not plausibly alleged retaliation. To be sure, "a close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse actions can be sufficient to establish causation." *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d. Cir. 2002). But a close temporal relationship is insufficient at the motion to dismiss stage where the adverse employment action preceded the protected activity. *See McAllister v. Queens Borough Pub. Libr.*, 309 F. App'x 457, 459 (2d Cir. 2009) (holding that plaintiff "failed to state a claim for retaliation because the only adverse employment action by his

10

employer . . . occurred *before* his protected activity") (emphasis added); *see also Johnson*, 2023 WL 2163774, at *7 (holding that plaintiff did not sufficiently establish causation where adverse action preceded protected activity). And the same logic applies where, as here, plaintiff is complaining of a set of consequences that the employer had already announced before any protected activity. Consequently, even though a relatively short period of time elapsed between the protected activity and the adverse employment actions, "it is not reasonable to infer that there was a causal connection between [plaintiff's] criticism of" her employer's COVID-19 policy and the actions of which she complains. *Johnson*, 2023 WL 2163774, at *7; *see Sharikov*, 2023 WL 2390360, at *14.

Accordingly, plaintiff's proposed amended complaint fails to state a claim for retaliation.

### III. Prohibited Disability-Related Inquiries and Medical Examinations

Plaintiff's proposed amended complaint adequately alleges a violation of Section 12112(d)(4)(A) of the ADA, which provides that a covered employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Plaintiff alleges that Quick ran afoul of those prohibitions when it forced employees to undergo "regular 'Covid testing,'" report their "vaccination status," and complete "health surveys." Am. Compl. ¶ 245. She further alleges that Quick "impose[d] certain non-job-related medical treatments," including requiring employees to "tak[e] experimental 'vaccines'; wear[] a surgical mask[] over the face; isolat[e]; and segregat[e]." *Id.* ¶ 259. Quick has argued that plaintiff has failed to exhaust these claims and that, in any event, they fail to state a claim. But as explained below, plaintiff has exhausted her Section 12112(d)(4)(A) claims. And plaintiff adequately pleads that one of these employer requirements—Quick's regular COVID testing—

11

violated the ADA's limitations on the use of medical examinations. Accordingly, Quick's motion to dismiss is denied as to plaintiff's Section 12112(d)(4)(A) claim.

### A. Plaintiff Has Satisfied the Administrative Exhaustion Requirement

As a preliminary matter, contrary to Quick's arguments, plaintiff has satisfied the ADA's administrative exhaustion requirement with respect to her Section 12112(d)(4)(A) claim because her claim is reasonably related to the allegations in her EEOC charge. Typically, a plaintiff cannot bring ADA claims in federal court unless she has first filed a charge of discrimination with the EEOC including such claims. *See* 42 U.S.C. § 12117(a); *id.* § 2000e-5(f); *see also Shah v. N.Y. State Dep't of Civ. Serv.*, 168 F.3d 610, 613 (2d. Cir. 1999). "Nonetheless, claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Shah*, 168 F.3d at 614. A claim is "reasonably related" to claims in an EEOC charge if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (quoting *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003)). In determining whether a claim is "reasonably related," the focus is "on the factual allegations made in the [EEOC] charge itself" rather than the label given to those allegations. *Ibid.* (alteration in original) (quoting *Deravin*, 795 F.3d at 201).

Though plaintiff's EEOC charge does not invoke Section 12112(d)(4)(A), it does include allegations that are reasonably related to such a claim. Specifically, the charge alleges that Quick "permit[ted] and encourage[d] other employees" to "ask [plaintiff] for medical, health and other personal information that does not pertain to, or is not necessary for, the performance of [her] employment duties." Statement in Support of Charge of Discrimination, Ex. A-13, at 3 (Dkt. #26-1). It alleges that Quick implemented what she terms "accommodation measures including but not limited to . . . collection, use and storage of my vital statistics, histological samples, and biometric

data and biometric identifiers without adequate or proper notice"; that her employer "terminat[ed] her" in part "for refusing such accommodation measures"; and that her employer failed to disclose that compliance with a COVID-19 "testing requirement . . . is an essential function of the job." *Id.* at 2. An EEOC investigation into those allegations would include in its scope the Section 12112(d)(4)(A) claims that plaintiff asserts in her amended complaint—namely, that Quick improperly subjected her to medical examinations and inquiries as part of its COVID-19 policy. In other words, because plaintiff alleged in her EEOC charge the basic facts underlying her Section 12112(d)(4)(A) claim, plaintiff has satisfied the exhaustion requirement. *See Williams v. N.Y.C. Housing Auth.*, 458 F.3d 67, 71 (2d. Cir. 2000) (holding that plaintiff's sex discrimination claim was "reasonably related" to the sexual harassment claim in her EEOC charge because the "factual underpinnings of a gender discrimination claim were presented in the complaint made to the EEOC").

### B. Plaintiff Has Stated a Claim Regarding Quick's COVID Testing Requirement

The proposed amended complaint adequately pleads that Quick violated the limitations on medical examinations contained in Section 12112(d)(4)(A) by requiring regular COVID tests. The ADA does not contain a definition of "medical examination." But ordinary usage aligns with the EEOC's definition of the term as a "procedure or test that seeks information about an individual's physical or mental health impairments." EEOC, Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the ADA (July 26, 2000), https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees#4. And as the EEOC has concluded, a test seeking information about whether an individual suffers from COVID-19 falls within this definition. *See* EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (May 15, 2023), https://www.eeoc.gov/wysk/what-you-should-know-about-

13

covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. A COVID test is therefore a "medical examination."[1]

As a result, Quick is permitted to "require" COVID tests only if "such examination . . . is shown" by Quick "to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *see Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97–98 (2d. Cir. 2003) (placing burden of establishing whether a medical examination is a business necessity on employer). The business-necessity inquiry is typically a fact-driven one. *See Conroy*, 333 F.3d at 99 ("[W]hat constitutes a business necessity will undoubtedly vary in different workplaces."). The employer must show that the examination or inquiry is "vital to the business," "genuinely serves the asserted business necessity," and "is no broader or more intrusive than necessary." *Id.* at 97–98. "The employer need not show," however, that the examination "is the only way of achieving a business necessity" so long as it is a "reasonably effective method of achieving the employer's goal." *Id.* at 98.

Whether Quick's COVID testing meets these requirements cannot be determined at this early stage. Quick argues that plaintiff's amended complaint fails to state a claim because it does not establish that Quick's COVID testing requirement was *not* job-related or consistent with a business necessity. Def.'s Resp. 4. But a plaintiff need only establish that her employer required a medical examination before the burden shifts to the employer to demonstrate business necessity. *See Conroy*, 333 F.3d at 97–98. Without any record beyond the limited facts in the amended complaint, it is not possible to determine whether the business necessity requirement is satisfied

---

[1] Quick argues that Section 12112(d)(4)(A) does not limit COVID testing because COVID testing does not reveal disabilities. Def.'s Resp. to Mot. to Amend ("Def.'s Resp.") 4 (Dkt. #28). But while the ADA limits only inquiries "as to whether such employee is an individual with a disability or as to the nature or severity of the disability," its limitation on medical examinations is broader. The statute simply provides that "[a] covered entity shall not require a medical examination . . . unless such examination . . . is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). The ADA thus limits medical examinations without regard to whether they reveal disabilities.

14

as to Quick's testing protocol.  *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (explaining that an affirmative defense supports dismissal under Rule 12(b)(6) only if "the defense appears on the face of the complaint").  Accordingly, plaintiff's proposed amended complaint adequately states a claim under Section 12112(d)(4)(A) based on regular COVID testing, and Quick's motion to dismiss is denied as to that claim.

### C. Plaintiff Has Not Otherwise Stated a Claim Under Section 12112(d)(4)(A)

In addition to alleging that Quick violated Section 12112(d)(4)(A) through COVID testing, plaintiff alleges that Quick violated Section 12112(d)(4)(A) by "inquiring about 'vaccination status'" and by conducting "health surveys."  Am. Compl. ¶ 245.  She also suggests that Quick violated Section 12112(d)(4)(A) by requiring vaccination and masking, as well as "isolation" and "segregation."  Am. Compl. ¶ 259.  Plaintiff has failed to state a claim through these allegations, because she has not plausibly alleged that the requirements in question amounted to medical examinations or disability inquiries.

First, "inquiring about 'vaccination status,'" *id.* ¶ 245, does not entail a medical examination or disability inquiry.  Such inquiries do not constitute medical examinations because they do not require employees to undergo a "procedure or test that seeks information about . . . physical or mental health impairments," EEOC, Enforcement Guidance, *supra*.  And as the EEOC has concluded, they are not disability-related inquiries because they do not involve "asking the employee a question that is likely to disclose the existence of a disability."  EEOC, What You Should Know About COVID-19, *supra*; s*ee Sharikov*, 2023 WL 2390360, at *15 (collecting cases concluding that an individual's vaccination status is not likely to reveal a disability).

Similarly, plaintiff does not allege that Quick violated the ADA's limitations on medical examinations or disability-related inquiries by requiring employees to "tak[e] experimental 'vaccines'; wear[] a surgical mask[] over the face; isolat[e]; and segregat[e]."  Am. Compl. ¶ 259.

15

These workplace rules do not seek medical information from employees through either examinations or inquiries. *See* EEOC, Enforcement Guidance, *supra* (defining "medical examination" as a procedure "that seeks information about an individual's physical or mental health impairments"); *Conroy*, 333 F.3d at 95 (defining "disability-related inquiry" as an inquiry into whether an employee "is an individual with a disability or as to the nature or severity of the disability") (citation omitted).

Finally, plaintiff's allegation that Quick forced its employees to complete "health surveys," Am. Compl. ¶ 245, is too conclusory to state a claim under the ADA. The amended complaint fails to describe the health surveys in any detail whatsoever, *see generally* Am. Compl., making it impossible to determine whether they fit within the ADA's definition of a medical examination or disability-related inquiry.

Accordingly, these Section 12112(d)(4)(A) theories fail to state a claim.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for leave to file an amended complaint is granted. In light of plaintiff's *pro se* status, the Clerk of Court is respectfully directed to file the amended complaint on the docket. Quick's motion to dismiss—construed as directed at the amended complaint—is granted as to plaintiff's claims of discrimination and retaliation in violation of the ADA. Quick's motion is denied as to plaintiff's claim under 42 U.S.C. § 12112(d)(4)(A), because plaintiff has plausibly alleged that Quick's COVID testing policy violates that ADA provision. Should plaintiff wish to further amend her complaint in an effort to remedy the deficiencies discussed above, she shall file a motion within thirty days seeking leave to amend, with the proposed amended complaint attached as an exhibit. The motion should explain how the

amended complaint addresses the pleading defects identified in this opinion. In the absence of a further motion to amend, the case will continue on plaintiff's Section 12112(d)(4)(A) claim.

SO ORDERED.

                                                  */s/ Rachel Kovner*
                                                RACHEL P. KOVNER
                                                United States District Judge

Dated: September 26, 2023
       Brooklyn, New York